UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GEORGE MANUEL EDDINS, JR.,

      Petitioner,

v.                                 Case No.  3:16cv575-LC-CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 12).  Petitioner did not reply although invited to do so.  (*See* Doc. 13).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On the evening of January 21, 2012, petitioner broke into 69-year old Archie Lucas' home while Lucas was asleep in his bedroom.  Lucas awoke when he heard a noise, and saw petitioner walk into a spare bedroom across the hall and turn on the light.  Lucas picked up a hammer lying on his dresser, went into the spare bedroom and observed petitioner picking through and gathering up items belonging to Lucas. Lucas approached petitioner and hit him on the left side of the head with the hammer. A fight ensued, where petitioner gained control of the hammer and beat Lucas with it on his head and body.  Petitioner then pulled out a knife and tried to cut Lucas' throat, but Lucas closed the blade.  The fight continued in the bedroom and down the hallway, with petitioner in primary control of the hammer.  Lucas eventually fled his home and contacted a neighbor (James Holt), who called 911.  Petitioner stole Lucas' wallet containing approximately $200 and then fled out the back door.  Mr. Lucas was transported to a hospital and treated for advanced blunt force trauma to his head, requiring 44 stitches.  Lucas was also treated for injuries to his right hand. Lucas sustained permanent injuries and disfigurement from petitioner's attack.

(Doc. 12, Exs. B-C (trial transcript)).[1]  Mr. Lucas identified petitioner as the sole perpetrator.   (Ex. B, pp. 111-12 (trial testimony); Ex. A, p. 78 (photo line-up)). During processing of the crime scene, law enforcement took a sample of blood from a box in Lucas' spare bedroom.   A complete DNA profile was obtained from the sample, and that profile matched petitioner's DNA profile.   As the State's DNA expert described it, the probability of a random person having the same DNA profile as the blood on the box was one in 33 quadrillion.  (Ex. C, pp. 245-47).

Petitioner was charged in Escambia County Circuit Court Case No. 2012-CF-752, with burglary of a dwelling with assault or battery (Count 1) and aggravated battery on a person 65 years of age or older with great bodily harm (Count 2).  (Ex. A, pp. 1, 3, 13).  The burglary was a first degree felony punishable by life, and the aggravated battery was a first degree felony punishable by 30 years' imprisonment. A jury found petitioner guilty as charged, and he was sentenced to life imprisonment for the burglary and to a concurrent term of 30 years imprisonment with a 3-year mandatory minimum for the aggravated battery.  (Ex. A, pp. 43-45 (verdict) and pp. 50-57 (judgment)).  On February 12, 2014, the Florida First District Court of Appeal

---

[1] References to exhibits are to those provided at Doc. 12.  When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottommost center of the page.

(First DCA) affirmed the judgment per curiam without opinion. *Eddins v. State*, 132 So.3d 226 (Fla. 1st DCA 2014) (Table) (copy at Ex. F).

On April 28, 2014, petitioner filed a *pro se* motion for reduction or modification of sentence under Florida Rule of Criminal Procedure 3.800(c). (Ex. O). The state circuit court denied relief on May 2, 2014. (Ex. P). Petitioner did not appeal.

On September 9, 2014, petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel. (Ex. K). The First DCA denied relief on the merits on October 10, 2014. *Eddins v. State*, 148 So. 3d 541 (Fla. 1st DCA 2014) (copy at Ex. L). Petitioner's motion for rehearing was denied on December 2, 2014. (Ex. N).

On September 24, 2014, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (Ex. H, pp. 1-48), which he later amended (*id.*, pp. 52-79). The state circuit court denied relief (Ex. I, pp. 80-275), and the First DCA affirmed per curiam without opinion. *Eddins v. State*, 194 So. 3d 1023 (Fla. 1st DCA 2016) (Table) (copy at Ex. J). The mandate issued August 2, 2016. (Ex. J).

Petitioner filed his federal habeas petition on October 21, 2016, raising ten grounds for relief.  (Doc. 1).  Respondent asserts that two claims are procedurally defaulted and that the remaining claims are without merit because the state court's rejection of them was consistent with clearly established federal law.  (Doc. 12).

RELEVANT LEGAL PRINCIPLES

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *See Boerckel*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014)

("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means

factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43,

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this

Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the

writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## DISCUSSION

Ground One          "The Trial Court Violated Petitioner's Right to Due Process When It Prohibited Petitioner from Presenting Evidence Relevant to His Defense." (Doc. 1, p. 5).

This claim involves petitioner's attempt to introduce out-of-court statements of Robert Odom acknowledging that he was in Mr. Lucas' home during the burglary. Petitioner hoped to introduce Robert's statements through Gerald Odom's testimony (Robert's brother).  During the defense proffer of Gerald's testimony, however, Gerald denied Robert made the statements.  When confronted with his (Gerald's) prior sworn statement to law enforcement describing Robert's statements, Gerald claimed the sworn statement was inaccurate and the product of intoxication. Defense counsel then proposed that he be allowed to call Gerald for the purpose of impeaching him with his prior sworn statement.  The State objected, and the trial court ruled that petitioner could not call Gerald Odom for that purpose.

Petitioner now challenges that evidentiary ruling, advancing two theories why Robert's out-of-court statements were admissible.  First, he says the statements fall under Florida's hearsay exception for excited utterances, Section 90.803(2), Florida

Statutes.  (Doc. 1, p. 5; *see also* Doc. 12, Ex. D, pp. 20-28 (counseled direct appeal brief)).  Second, the statements are admissible regardless of any hearsay issue, because due process "requires that any relevant evidence that tends to establish reasonable doubt or supports a defendant's theory of defense must be admitted." (Doc. 1, p. 6; Doc. 12, Ex. D, pp. 20-28 (*citing Chambers v. Mississippi*, 410 U.S. 284 (1973))).  Petitioner does not address the admissibility of Gerald's prior sworn statement to law enforcement.

The parties agree that petitioner presented this claim to the First DCA in his direct appeal.  (Doc. 1, p. 6; Doc. 12, pp. 19-20).  The First DCA summarily affirmed without explanation.  (Ex. F).  The First DCA's decision is entitled to deference under § 2254(d).  *See Richter*, 562 U.S. at 99 (holding that § 2254(d) applies when a state court's opinion is unaccompanied by an explanation of the reasons relief was denied: "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The First DCA's decision was not contrary to, or an unreasonable application of Supreme Court precedent.  Petitioner's defense strategy was to raise reasonable

doubt about the State's proof that it was he who committed the burglary and battery. The defense argued that although the State's DNA evidence placed petitioner inside Mr. Lucas' home, the State failed to prove beyond a reasonable doubt that petitioner, as opposed to Robert Odom, assaulted and beat Mr. Lucas. (*See* Ex. B, pp. 91-94 (defense opening statements); Ex. C, pp. 305-13 (defense closing statements). This strategy, if successful, could have reduced petitioner's sentence exposure on Count 1 and eliminated Count 2. The following describes the development of Gerald Odom's testimony.

Approximately one week after the crime, Gerald was interviewed by Escambia County Sheriff's Office Investigator Robert Norman. Gerald gave a sworn statement to Investigator Norman on January 28, 2012, which was later transcribed. (Ex. A, pp. 93-96). According to the transcript, Gerald Odom stated that his brother Robert Odom called him the day after the crimes and told him that he (Robert) was at a friend's house cleaning petitioner up because petitioner had been beaten with a hammer. Robert said "they" had been "hiding" ever since, and that both he and petitioner were inside Mr. Lucas' home the night of the burglary and battery. (*Id*., pp. 94-95). According to the transcript, Gerald Odom went on to describe that, "My brother, my brother got out of the house before he [petitioner] got

attacked or whatever and Junior [petitioner] had attacked the man supposedly and the man took the hammer back from Junior and attacked him and beat his [expletive] with it." (*Id.*, p. 96).

At a later pretrial deposition (which are allowed in Florida in all state criminal cases), Gerald Odom denied the statements attributed to him in the transcribed statement, and described his statement to Investigator Norman this way:

> A [Gerald Odom]: "I did say that I overheard a conversation with somebody that was talking to Robyn saying that Junior [petitioner] was being cleaned up because he was bloody. I never said anything about my brother.
>
> . . . .
>
> . . . All I heard was that Robyn was cleaning up Junior Eddins because he was bleeding everywhere.
>
> Q [Defense Counsel Dosher]: You said that you overheard someone talking to Robyn?
>
> A: Yeah. I don't know who it was. I was drinking that night. But, yeah, I did overhear a conversation about Junior being cleaned up.
>
> Q: And Robyn said this?
>
> A: Yeah.
>
> Q: About Junior being cleaned up and is Junior George Eddins?
>
> A: Yes, ma'am.

Q:  And you know him as Junior?

A:  Yeah. . . .

(Ex. A, pp. 102-03).

During trial, outside the presence of the jury, defense counsel proffered Gerald's testimony.  Gerald gave yet another version.  Gerald testified he was drunk when he gave the statement to Investigator Norman and that the statement was coerced and incorrect; that he told Norman he overheard a phone conversation where a girl (not his brother Robert) talked about cleaning petitioner up because petitioner was bleeding; that he never told Norman he spoke to his brother the night of the incident or that Robert had reported cleaning petitioner up; and that he (Gerald) never said anything about a hammer to Investigator Norman.  (Ex. C, pp. 281-84).

Following the proffer, defense counsel lamented the predicament he was in. (Ex. C, pp. 284-90).  Defense counsel argued:

> MR. CRAWFORD [Defense Counsel]:  I'm in an interesting situation now, Your Honor.  The individual [Gerald Odom] gave a sworn statement to Investigator Norman, was recorded, and it was transcribed.
>
> I tried to impeach him just – up there with this statement.  He said that he didn't make that statement.  Under 96.14 when an individual has a prior inconsistent statement, and they do not admit, the language is interesting.  I'm trying to pull it up in my head.

When the statement – when the individual is confronted with that statement, and they do not entirely admit that statement was made, I get to put that statement into evidence, 96.29, Your Honor.

THE COURT:  Ms. Brodersen.

MS. BRODERSEN [Prosecutor]:  Your Honor, I would have to look at the rule.  That's not my understanding of –

THE COURT:  I still think we have the same issue that was raised earlier by the State. . . . That you can't call somebody simply to impeach them, but let me see – see, here's this is 96.14.  I'm not reading the actual language of the statute.   I'm reading Erhardt's comment underneath.

Credibility may be attacked by showing that the witness made a statement prior to trial that is inconsistent with the testimony of the witness at trial.

So that's our starting sentence.  I'm trying to think this through, but if you call the witness to say, did your brother – first of all, I'm still back at my original hearsay issue, too, but let's say you called him in front of the jury and said, did your brother call you that night?  And he says no, and then you publish the inconsistent statement, it's really just calling him to get the prior inconsistent statement in, and that's where I think the problem is.

He's not a witness in the case.  In any other sense you would call him and ask him that one question, I believe, or questions like that.

MR. CRAWFORD:  Let's say that he said yes.

THE COURT:  Okay, but he didn't say yes.

MR. CRAWFORD:  I understand, and that's the problem that we're at. Let's just say he did say yes because at one point in time, in the event of time, he did say yes.  He did give this story.

So let's say I just called him and ask him, hey, did your brother call you that night and he said yes.  I would have been able to develop – may have been able to develop a hearsay exception because I could ask him, what did his brother say to him, and what fashion did his brother say it to him.

Did it sound like his brother was still under stress or excitement? I could have developed a hearsay exception in either 803.1 or 803.2, but then he denied it, so now, this fact that at one point in time he testified to, will never reach the jury because he denied it.  That's the reason that we have 96.14.

THE COURT:  Okay.  And then this is another part that Erhardt says, the prior statement is admissible to impeach only if it is, in fact, inconsistent, i.e., it directly contradicts an in-court testimony or there is a material variance between these two statements.

So the way this witness testified, he said I may have said that, but that cop coerced me, at cetera, et cetera, so I don't know that it –

MR. CRAWFORD:  He told us it wasn't his brother that called.  He told us that he didn't say nothing about no hammer.

THE COURT:  Okay.  Well, you're record is now complete, Mr. Crawford, but I'm still not going to allow the witness to testify based upon the various reasons. . . .
        . . . .

THE COURT:  . . . Anything else, Mr. Crawford, to put in the record?

MR. CRAWFORD:  Yes, Your Honor.  Yes, I would like to add some, maybe, quite a bit into the record.  Gerald Odom gave a statement on

January 28, 2012, to Investigator Robert Norman.  That statement was transcribed.  It was transcribed into four pages, and those four pages found on page 2, line 1, Mr. Odom answers, yeah, my brother called me and said that they were at a friend's house claiming [sic] his friend Junior Eddins because he had been beat with a hammer and stuff.

Today we heard that his brother did not call him and that nothing of a hammer was discussed and this was all coerced.

He goes on to say when asked, okay, now, you're – is your brother Robert Lester Odom?  Yes, sir.  All right, and he – the friend he was referring to, you said to Junior Eddins.  Is that George Eddins?  Yes, sir, that's the one.

Goes on to say, just the fact that they called me on the phone and said that Junior got hit with a hammer.  "They" referring to his brother and Mr. Eddins.  I would like to attach this.

THE COURT:  It's already a court's exhibit and will be included, I think.

MR. CRAWFORD:  The argument from the defense is when questioned about this prior statement, Mr. Odom, in part, denied making it.  96.14 is very clear and the case law analyzing 96.14 is very clear that if they deny or do not fully admit – I believe, that's the language I forgot – fully admit to making such statement, that it is admissible.

That would be the argument of the defense, and at this point in time there is no vehicle that we can use to present to the jury the fact that this statement was once made to Investigator Norman.

THE COURT:  Okay.  Ms. Brodersen, anything from the State's record?

MS. BRODERSEN:   Again, Judge, my previous objection to the hearsay issues.   Again, it's pretty clear from their argument they're wanting to get this in, which, clearly the statement is helpful to the State because it implicates Mr. Eddins, but then they would be calling him [Odom] for the sole purpose to impeach him with the statement that he gave in deposition which is not allowed under the rules.

THE COURT:  All right.  I think the record is clear, and we had the benefit of the actual witness present.  I'm going to continue with my ruling from this morning, which is, that based upon that, the posture of the case, the statements that the witness will be called to answer, that I'm not going to allow that testimony, and I don't know that Mr. Crawford has any other reason to call him as a witness, so therefore, unless you tell me, Mr. Crawford, at some point we will release him to be taken back to the jail.

(Ex. C, pp. 284-90).

On direct appeal, petitioner argued as he does here that the court's exclusion of Gerald Odom's testimony deprived him of his right to due process under *Chambers v. Mississippi*, 410 U.S. 284 (1973), because the evidence was relevant to his defense "even if the hearsay rule would normally cause such evidence to be excluded."  (Ex. D, pp. 20-28).  Petitioner, overlooking the fact that Gerald Odom's proffered testimony denied the phone conversation with Robert, argued that Gerald Odom would have testified "regarding a phone call he received from his brother after the incident", and that such hearsay testimony "would fall under the excited utterance exception to hearsay."  (Ex. D, p. 25).  Petitioner argued that "Whether the

evidence offered for admission was hearsay or was an exception to hearsay, it should still have been admitted as relevant and necessary to support Appellant's theory of defense and establish reasonable doubt." (*Id*., p. 26).  Petitioner explained that his theory of defense was "that at least one of the Odom boys, Robert, was present in the home at the time of the burglary.  Robert's presence raises reasonable doubt as to Appellant's role in the offense.  The defendant could argue that Appellant was either not present at all, was not present during the attack, or was not the individual who struck Lucas with the hammer." (*Id*., pp. 26-27).  Petitioner advances the same arguments here.  (Doc. 1, pp. 5-6).

In *Nevada v. Jackson*, 569 U.S. 505 (2013), the United States Supreme Court said:

> "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (*quoting California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)), but we have also recognized that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials,'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (*quoting United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed.2 d 413 (1998)).  Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.  *See* 547 U.S., at 331, 126 S. Ct. 1727 (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37

(1987) (rule arbitrary); *Chambers v. Mississippi*, 410 U.S. 284, 302-303, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (State did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (rule could not be rationally defended).

*Id*. at 509.

Petitioner's claim relies on *Chambers v. Mississippi*. In *Chambers*, the Supreme Court held that the exclusion of hearsay statements critical to the defendant's defense and that "bore persuasive assurances of trustworthiness" violated the defendant's Fourteenth Amendment right to due process. 410 U.S. at 302. The hearsay statements at issue in *Chambers* were a declarant's out-of-court confessions to the crime with which the defendant was charged, and they "bore persuasive assurances of trustworthiness" because: (1) they were "made spontaneously to a close acquaintance shortly after the [crime] occurred"; (2) each statement was "corroborated by some other evidence in the case – [including] [the declarant's] sworn confession [and] the testimony of an eyewitness"; (3) "each confession . . . was . . . self-incriminatory and unquestionably against interest" and (4) "if there was any question about the truthfulness of the extrajudicial statements, [the declarant] was in the court room and was under oath . . . [so that] [h]e could

have been cross examined by the State, and his demeanor and responses weighed by the jury." *Id*. at 300-01.

The First DCA's decision was not contrary to or an unreasonable application of *Chambers*. The substance of the evidence excluded in this case could not honestly be characterized as a confession that exonerated petitioner of the burglary and battery, or that even raised reasonable doubt that he committed the crimes. To the contrary, Robert Odom's statements placed petitioner inside Mr. Lucas' home attacking Lucas with the hammer. Moreover, the excluded evidence did not bear "persuasive assurances of trustworthiness". Robert Odom was not in the courtroom available to testify. The only evidence of Robert's hearsay statements was the transcript of Gerald's sworn statement to Investigator Norman, which Gerald claimed was incorrect, a result of coercion, and made while intoxicated, and which Gerald subsequently repudiated by twice denying under oath that Robert ever called him or made any statement about the burglary and battery. Neither *Chambers* nor any other United States Supreme Court precedent clearly establishes that excluding evidence of the kind here violates due process. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two            "Expert Testimony During the State's Case-In-Chief and Comments in Closing Argument Referencing the DNA Evidence Found on the Doorknob in Lucas' Home as a 'Match' to Petitioner when It Was a Partial DNA Profile with a Single Common Loci Rose to the Level of Fundamental Error."  (Doc. 1, p. 6).

Petitioner claims fundamental error occurred when the State's DNA expert, Dr. Chan, used the term "match" to describe the relationship between petitioner's DNA profile and a partial DNA profile obtained from a swab of blood on a doorknob in Mr. Lucas' home.  (*See* Doc. 12, Ex. C, p. 245, 247 (Chan testimony)).  Petitioner asserts that although Florida courts have allowed use of the term "match" in cases involving partial DNA profiles, his case is factually distinguishable because only one DNA marker matched.  Petitioner claims the testimony "was not relevant, was misleading, and the probative value was outweighed by the unfair prejudice."  (Doc. 1, p. 6).  Petitioner argues that the error was compounded when the prosecutor also used the term "match" when discussing that evidence in closing argument.  (*Id.*, pp. 6-8).  Petitioner states he presented this claim to the state court in his direct appeal.  (*Id.*, p. 8).

Respondent asserts that Ground Two provides no basis for federal habeas relief because (1) petitioner's claim is based on perceived errors of state law for which habeas relief does not lie, and (2) to the extent Ground Two can be liberally

construed as raising a federal constitutional claim, it is procedurally defaulted because petitioner's direct appeal brief did not fairly present the issue as a federal constitutional claim nor even cite any federal constitutional grounds. (Doc. 12, pp. 8-10, 20-21).

Respondent is correct on both points. Petitioner's allegations present a purely state law question involving the admissibility of evidence under Florida law. Petitioner does not allege a constitutional violation. Federal habeas relief is available to correct only constitutional injury. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions."). "The writ of habeas corpus was not enacted to enforce State-created rights." *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983))).

Moreover, no federal constitutional claim appeared in petitioner's counseled direct appeal to the First DCA. In the initial brief, petitioner made one passing reference to federal law. After conceding that the issue was not preserved by objection at trial as required by Florida law, and that it was therefore subject to Florida's more onerous fundamental error standard of review, petitioner explained that in Florida, "[a]n error is fundamental 'when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.'" (Doc. 12, Ex. D, pp. 29-30 (*quoting J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998))). Nowhere in his argument did petitioner argue federal standards or even include a reference to federal case law. (Ex. D, pp. 30-36). Petitioner instead confined his argument to state law and state standards, namely, the Florida Evidence

Code, Florida case law discussing Florida's guidelines for admitting DNA evidence involving partial profiles, and Florida case law determining whether, in particular circumstances, a prosecutor's closing argument was misleading and constituted reversible error.  (Ex. D, pp. 30-35).  Petitioner concluded:

> The admission of that DNA evidence, the reference to it as a "match" to Appellant, the bolstered manner in which it was presented, and the prosecutor's comments in closing regarding it were irrelevant, misleading and confusing to the jury, and likely vitiated Appellant's trial.  Appellant asserts that these errors rose to the level of fundamental error and that a new trial is warranted.

(*Id*., pp. 35-36).

Thus, even had petitioner presented this court with a federal due process claim, the claim would be procedurally defaulted because he did not present a federal due process claim to the state court.  The Eleventh Circuit requires more than "needles in the haystack" to satisfy the exhaustion requirement.  *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) ("We therefore hold that the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." (internal quotation marks and citations omitted)).  Petitioner makes none of the requisite showings to

excuse his procedural default.  Petitioner's procedural default bars federal habeas

review.[3]

---

[3] While not controlling, the court notes that the circumstances of this case are very similar to those addressed in an unpublished opinion, *Ramos. v. Sec'y, Fla. Dep't of Corr.*, 441 F. App'x 689, 696-97 (11th Cir. 2011).  There, the Eleventh Circuit held that the petitioner failed to exhaust his federal due process claim arising from the unobjected-to admission of a medical examiner's testimony which petitioner contended was scientifically unreliable, and from the unobjected-to admission of a computer-generated animation of the position of the victim's body.   The Eleventh Circuit determined that neither issue was presented to the state court as a federal constitutional claim.  The court explained:

> Ramos claims denial of due process in the admission of the testimony of the medical examiner into evidence.  In his brief to the District Court of Appeal of Florida, Ramos made one passing reference to federal law.  He stated that "this evidence was so devastatingly prejudicial that its introduction violated his Florida and federal constitutional rights to due process and a fair trial and the error was fundamental and, thus, must be considered by this court even absent objection." Nowhere in his argument does he argue federal standards, nor does he include references to federal case law.   While other Circuits have interpreted *Baldwin* differently, as Ramos discusses in his brief, we have required more than "needles in the haystack." *McNair*, 416 F.3d at 1303.  *But see Jackson v. Edwards*, 404 F.3d 612, 618–22 (2d Cir.2005) (focusing on the degree of similarity of the state law claims and federal law claims in deciding exhaustion for the purpose of habeas).  In *McNair*, we found that a citation to a single federal case in a string of cases, and a passing reference in the conclusion of an argument to various amendments of the Constitution did not fairly present the federal issue to the state court, barring federal habeas review for lack of exhaustion in the state courts.  416 F.3d at 1303-04.

> Similarly, here Ramos mentions his federal constitutional rights only in an opening paragraph.  This reference did not fairly present the issue to the state court, and so it has not been exhausted.  Our holding in *McNair* does not depend on whether the state and federal standards for each issue were identical, but rather whether the state court was on notice of the federal claim.  *Id.* at 1304.  Here, the state court was not on notice of the due process claim in his objection to the admission of evidence, so the issue was not properly exhausted in the state court.

> Second, Ramos argues that the admission of the computer-generated animation violated his due process rights.  In his appellate brief in the state court,

Finally, even if petitioner's present and direct appeal claims were construed as alleging a violation of the Due Process Clause, the First DCA's rejection of that claim would not be contrary to, or an unreasonable application of, clearly established federal law.  No decision of the United States Supreme Court suggests that allowing a DNA expert to reference evidence of the kind here as a "match" violated some constitutional rule.  Similarly, "the Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process."  *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287 (11th Cir. 2012). For all of the above reasons, petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three          "Counsel Conceded to Defendant's Guilt in (Ct. 1) Burglary w/Assault/or Battery, Defendant Did Not Consent to Counsel's Strategy, thus Violating His Constitutional Right to Due Process of Law and Effective Assistance of Counsel."  (Doc. 1, p. 8).

Petitioner claims counsel was ineffective for conceding his guilt to Count 1 (burglary of a dwelling with assault or battery), without petitioner's consent.

---

he mentioned that the admission of the animation violated his "constitutional right to a fair trial" and due process rights.  Again, his legal argument is confined to state law and state standards.  Applying *McNair*, Ramos's brief did not put the state court on notice of the federal issue, and so he did not exhaust the federal question in state court and we therefore cannot grant the relief he seeks.

*Id.* at 696-97 (referencing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).

Specifically, petitioner asserts that during closing argument, counsel acknowledged the State's DNA evidence placing him inside Lucas' home and stated, "He may have committed the burglary. He could have been in there when Odom was in there, but was he the one that swung the hammer?" (Doc 12, Ex. C, p. 310). Petitioner argues that counsel's concession "denied [him] his constitutional right to have a jury decide his guilt or innocence", deprived him of a fair trial, and constituted ineffective assistance of counsel. (Doc. 1, pp. 8-9). Petitioner states he was prejudiced by counsel's statements, because "there lies a 'reasonable probability' that had it not been for counsel's conceding defendant's guilt the jury would have returned a verdict of not guilty." (*Id*., p. 9). Respondent asserts that petitioner is not entitled to habeas relief, because the state court's rejection of this claim was consistent with clearly established federal law. (Doc. 12, pp. 21-23).

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-pronged standard for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard

of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable

professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the

> question is not whether counsel's actions were reasonable. The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### B.    Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state court in his

amended Rule 3.850 motion. The state circuit court denied relief (Ex. I, pp. 83-84),

and the First DCA affirmed without explanation. (Ex. J). The relevant decision for

purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance, which is

considered the final state court adjudication on the merits of petitioner's claim. *See

Richter*, 562 U.S. at 99; *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227,

1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review

as the state appellate court's summary affirmance of the lower tribunal's decision),

*cert. granted sub nom. Wilson v. Sellers*, 137 S. Ct. 1203 (2017) (No. 16-6855).

Where, as here, "the last adjudication on the merits provides no reasoned

opinion, federal courts review that decision using the test announced in *Richter*."

*Wilson*, 834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's

decision is unaccompanied by an explanation," a petitioner's burden under section

2254(d) is to "show[ ] there was no reasonable basis for the state court to deny

relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

Contrary to petitioner's assertion, the trial transcript establishes that defense counsel did <u>not</u> concede petitioner's guilt to the actual charge of burglary with an assault or battery. (Doc. 12, Ex. C, pp. 305-13). Counsel stated, in addressing the State's DNA evidence, that petitioner "may have committed the burglary" and "could have been" in Mr. Lucas' home that evening. Counsel, however, never conceded petitioner beat Mr. Lucas, and in fact vehemently maintained that petitioner was <u>not</u> the one who hit, or was hit by, Mr. Lucas. (Ex. C, p. 310). Counsel's closing argument reflects a course of conduct for obtaining the most favorable result for petitioner given the weight of the evidence of guilt. The damning DNA evidence of petitioner's blood on a box in Mr. Lucas' spare bedroom left no room for petitioner's complete exoneration. Counsel maintained credibility with the jury by acknowledging the evidence placing petitioner inside Lucas' spare bedroom, while arguing there was too much doubt about the State's theory that petitioner did

anything more than participate in a burglary. This balancing act satisfied *Strickland's* deferential standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. . . . Judicial review of a defense attorney's summation is therefore highly deferential – and doubly deferential when it is conducted through the lens of federal habeas.").

Petitioner also does not convincingly show he was prejudiced by counsel's closing argument. The victim identified petitioner in the courtroom as the person who entered his residence without his consent and whom he discovered in the spare bedroom of his home where the violent altercation occurred. (Ex. B, pp. 100-05, 110-12). The State's DNA expert testified that DNA in blood recovered from a box in Lucas' spare bedroom (State's Exhibit 30) matched petitioner's DNA; that "[t]he frequency of occurrence of the DNA profile obtained from Exhibit 30 for unrelated individuals is approximately one in 33 quadrillion"; and that there are only "[a]pproximately seven billion people on the planet." (Ex. C, p. 246). Given this evidence, no reasonable probability exists that the jury's verdict on Count 1 would

have been different had counsel disputed, in the face of all the evidence, petitioner's presence at the scene.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four        "Counsel Conceded to Defendant's Guilt in (Ct. 2) Aggravated Battery on 65 or Older, Defendant Did Not Consent to Counsel's Strategy, thus Violating His Constitutional Right to Due Process of Law and Effective Assistance of Counsel."  (Doc. 1, p. 9).

Petitioner claims counsel was ineffective for conceding his guilt to Count 2 (aggravated battery on a person 65 years of age or older, with great bodily harm), without his consent.  Specifically, petitioner asserts that counsel's stipulation that the victim received "permanent injuries and permanent disfigurement" was the functional equivalent of a guilty plea to Count 2.  Petitioner contends that "there lies a 'reasonable probability' that had counsel not stipulated to the victim's permanent injuries the jury would have returned a verdict of not guilty."  (Doc. 1, pp. 9-10). Respondent argues petitioner is not entitled to habeas relief, because the state court's rejection of this claim was consistent with clearly established federal law.  (Doc. 12, pp. 23-25).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state court in his amended Rule 3.850 motion. The state circuit court denied relief (Ex. I, pp. 84-85), and the First DCA summarily affirmed. (Ex. J). The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance.

The First DCA reasonably could have concluded that petitioner's allegation that counsel conceded his guilt to Count 2 was conclusively refuted by the record. The trial transcript establishes that counsel did not concede defendant's guilt to Count 2; rather, he merely stipulated to the victim's injuries. (Ex. B, p. 107 ("[T]he Defense will stipulate that Mr. Lucas has received permanent injuries and permanent disfigurement.")). Counsel did not stipulate that it was petitioner who caused the injuries. To the contrary, counsel aggressively argued that the State failed to prove it was petitioner, as opposed to law enforcement's other person of interest, Robert Odom, who hit Lucas with the hammer. There is a reasonable argument that petitioner failed to satisfy either of *Strickland*'s prongs.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "Counsel Failed to Request a Self-Defense Instruction and/or Prepare a Defense Involving the Justifiable Use of Force." (Doc. 1, p. 11).

Petitioner claims counsel was ineffective for failing to request a self-defense instruction and/or failing to prepare a defense involving the justifiable use of force. Petitioner's self-defense theory arises from Mr. Lucas' testimony that he hit the intruder in the head with a hammer while the intruder was bending down gathering items. In such circumstances, petitioner contends, his use of force likely to cause death or great bodily harm was justifiable, because he "reasonably believed it was necessary to prevent imminent death or great bodily harm" and because he "was forced to defend himself from the victim[']s attack." (Doc. 1, p. 11). Petitioner claims that if a theory of self-defense had been presented and the corresponding jury instruction given, it "would have produced the reasonable doubt necessary to acquit him of the offense." (*Id.*, p. 11-12). Respondent asserts that petitioner is not entitled to habeas relief, because the state court's rejection of this claim was consistent with clearly established federal law. (Doc. 12, pp. 25-27).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner presented this ineffective assistance claim to the state court in his amended Rule 3.850 motion.  The state circuit court denied relief (Ex. I, pp. 85-87), and the First DCA summarily affirmed.  (Ex. J).  The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance.

The First DCA reasonably could have determined that petitioner failed to establish deficient performance and prejudice for the reasons stated in the state circuit court's order denying relief:

> At trial, the entire theory of defense was that it was not Defendant, but likely Robert Odom, who caused harm to the victim.  If counsel had employed a self-defense argument, counsel would have been conceding that not only was Defendant present at the victim's home but Defendant was the person who hit the 70-year old victim with a hammer at least 6 times in the head.  Counsel would have essentially conceded guilt to the charges so that Defendant could raise the very weak theory of self-defense in this case.
>
> The overwhelming evidence of the victim's condition and injuries would not have supported a theory of self-defense.  While it is true that the evidence showed the victim was the initial aggressor with the hammer, the evidence also showed that the victim was a 70-year old man who had previously suffered a stroke.  The victim testified that he

knew he needed to keep on his feet during the altercation with defendant because if he fell down he would never be able to get up again. The victim suffered at least 6 blows to the head with the hammer. He also suffered injuries to his right hand, the only hand he could really use after the stroke. The victim was so maimed by his assailant that when he was finally able to get away and go to his neighbor for help, his neighbor could not recognize him. There was so much blood, the victim's blood, that his neighbor could not even tell the color of the victim's skin; he could only recognize the victim by his voice. The victim's house, where the altercation took place, was smeared in the victim's blood, in comparison to the very small amount of blood found of Defendant's. Such circumstances would not support Defendant's contention that Defendant was in fear of imminent death and therefore bludgeoning the victim numerous times with a hammer was justifiable. . . .

(Ex. I, pp. 86-87) (footnotes omitted).

As the lower state court explained, given the facts of this case, a theory of self-defense had a much lower chance of success than the defense theory counsel chose; thus, counsel was not deficient for failing to pursue self-defense. Further, because the defense strategy actually pursued at trial refused to acknowledge that petitioner even wielded the hammer, defense counsel was not deficient for failing to request a self-defense instruction. *See, e.g, Phillips v. State*, 874 So.2d 705, 707 (Fla. 1st DCA 2004) (holding that the trial court correctly denied a self-defense instruction where the defendant refused to acknowledge that he even wielded a knife). Ironically, and highlighting the near absurdity of this claim, petitioner, who

had earlier argued that counsel was ineffective for conceding guilt as to a burglary, now essentially argues that counsel was ineffective for <u>not</u> conceding petitioner's commission of the burglary, for how else did petitioner find himself in confrontation with the householder?

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Five.

| | |
|---|---|
| <u>Ground Six</u> | <u>"Counsel Failed to Request a Self-Defense Instruction and/or Adding of the Instructions after Closing Argument." (Doc. 1, p. 13).</u> |

The label of petitioner's claim does not reflect its substance. The substance of petitioner's claim asserts that counsel was ineffective for failing to object to the court's reading to the jury the standard instruction for assault, after the jury started deliberating, and in response to a jury question. (Doc. 1, pp. 13-14). Respondent asserts that petitioner is not entitled to habeas relief because the state court's rejection of this claim was consistent with clearly established federal law. (Doc. 12, pp. 27-29).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state court in his amended Rule 3.850 motion.  The state circuit court denied relief (Ex. I, pp. 87-89), and the First DCA summarily affirmed.  (Ex. J).  The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance.

The First DCA reasonably could have determined that petitioner failed to establish deficient performance and prejudice for the reasons stated in the state circuit court's order denying relief:

> Defendant also alleges that his counsel was ineffective for failing to object to the Court giving additional jury instructions after closing arguments.  After the jury had already begun deliberating, the jury sent out a question to the Judge asking[,] "What is the difference between battery and assault?"  Without objection from the state or defense, the Judge brought the jury back out and instructed the jury that battery was already defined in the jury instructions.  The Court then read the standard instruction for assault to the jury.  Defendant claims that this amounted to the Court committing error by giving additional jury instructions.  Defendant claims that because of the "erroneous" instruction, he was found to have committed both assault and battery during the episode and because of this finding was sentenced to life in prison.  Defendant alleges that but for counsel's failure to object to the additional instruction, the proceedings would have been different.

Defendant is incorrect in his assertions.  Initially, Defendant is incorrect that the court committed error by instructing the jury on the definitions of assault and battery after deliberations had already begun. The cases relied upon by Defendant are inapposite to this case.  In <u>Kruth v. State</u>, 679 So. 2d 22 (Fla. 2d DCA 1996) and <u>Atwell v. State</u>, 739 So. 2d 1166 (Fla. 1st DCA 1999), the Court gave a different jury instruction after closing arguments than what was originally decided to be given.  Because defense counsel based their closing arguments on the instruction proposed at the charge conference, the Court giving changed instructions was considered error.  In this case, the record demonstrates that during the initial jury instructions, the jury was actually instructed on both the definition of assault and battery. Therefore, the "additional" jury instruction which forms the basis of Defendant's claim was not in fact additional.  The jury was instructed on the definitions of both battery and assault during the jury instructions.  These instructions were not changed from that which were contemplated at the charge conference and did not affect the substance of counsel's closing arguments.  Consequently, no error was committed by the Court.  As the Court did not commit error, counsel cannot be found deficient for failing to lodge a meritless objection.

Defendant is also incorrect that his sentence of life in prison was based upon the fact that the jury found he had both assaulted and battered the victim in this case.  Defendant was charged with burglary of a dwelling with assault *or* battery.  The offense is a first degree felony punishable by life.  It is true that the jury verdict form included specific interrogatories regarding assault and battery, but Defendant was found guilty of the offense "as charged."  Consequently, whether the jury found Defendant had committed assault or battery or both would not have made a difference in the sentence.  Defendant is unable to demonstrate that he was prejudiced and he is not entitled to relief as to this claim.

(Ex. I, pp. 87-89) (footnotes omitted).

The state court record confirms the foregoing facts. (Ex. C, pp. 267-77 (charge conference where the parties agreed to jury instructions that included, within the burglary instruction, the definition and elements of assault but did not include a separate, stand-alone instruction for assault); Ex. A, p. 26 (written jury instructions); Ex. C, pp. 319-20 (oral jury instructions); Ex. A, p. 41 (jury question: "What is the difference between 'battery' and 'assault' (page 1)?"); Ex. C, pp. 343-47 (court's reading of jury question to counsel and discussing appropriate response; agreement for court to read standard instruction for assault); Ex. C, pp. 346-47 (court's reading of standard instruction for assault); Ex. A, pp. 43-45 (verdict)). Petitioner's proposed basis for counsel objecting to the reading of the standard jury instruction for assault is frivolous. Counsel is not ineffective for failing to make a meritless objection. *See Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Moreover, petitioner fails to demonstrate that had the court <u>not</u> read the standard instruction for assault, there is a reasonable probability his conviction or sentence would have been different.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Six.

Ground Seven          "Counsel Failed to Object to the Trial Court's Failure to Track the Statutory Language of Theft or to Define Theft for the Jury as to Mandate the Required Specific Intent to Deliver [sic] an Owner Permanently."  (Doc. 1, p. 14).

Petitioner claims counsel was ineffective for failing to object to the jury instruction for burglary.  Petitioner asserts that the instruction should have defined the elements of theft, including the intent to permanently deprive the owner of his property.  (Doc. 1, pp. 14-15).  Respondent asserts that petitioner is not entitled to habeas relief, because the state court's rejection of this claim was consistent with clearly established federal law.  (Doc. 12, pp. 29-31).

A.      Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

B.      Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state court in his amended Rule 3.850 motion.  The state circuit court denied relief (Ex. I, pp. 89-91),

and the First DCA summarily affirmed.  (Ex. J).  The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance.

The First DCA reasonably could have determined that petitioner failed to establish deficient performance and prejudice for the reasons stated in the state circuit court's order denying relief:

> Defendant further alleges that counsel was ineffective for failing to object to the Court's failure to "track the statutory language of theft" or to define theft for the jury as to mandate the required specific intent to deprive an owner of his proper[ty] permanently.  Defendant claims that because of the erroneous instruction, the jury did not find the specific intent element when it found Defendant guilty as charged. Defendant further contends that he was prejudiced because the jury was misled as to the requirements of finding Defendant guilty.  Defendant further claims it was never proven at trial that Defendant had the intent of committing theft to permanently deprive the owner.  Defendant asserts that because of his counsel's error, defendant was found guilty of burglary with intent to commit theft, and subsequently received a life sentence.  Defendant alleges that his proceedings would have been substantially different if not for counsel's error.

> Defendant is mistaken.  Defendant was not found guilty of burglary with intent to commit theft, but was found guilty as charged of burglary of a dwelling with assault or battery.  Defendant was not even charged with the crime of theft, therefore he was not entitled to a specific jury instruction on the offense.  The only reason theft was referenced in Defendant's jury instructions was because it was part of the instruction regarding the burglary charge.  Specifically, the jury was instructed:

> > To prove the crime of burglary the State must prove the following two elements beyond a reasonable doubt:

> number one, George Eddins, Junior, entered a structure owned by or in the possession of Archie Lucas.
>
> Number two, at the time of entering the structure George Eddins, Junior, had the ***intent to commit theft*** in that structure, and ***you may infer that George Eddins, Junior, had the intent to commit a crime inside a structure if the entering of the structure was done stealthily and without the consent of the owner or occupant***.

Consequently, the jury did not need to find that Defendant actually committed a theft to find Defendant guilty of burglary, only that he had the "intent" to commit theft.  This instruction was proper for Defendant's case.  The evidence at trial shows that Defendant intended to commit theft inside the structure.  When the victim encountered Defendant, he was inside of [the victim's] home uninvited, bending over and picking up items inside the spare bedroom of [the victim's] home.  Defendant is also incorrect that the evidence at trial did not demonstrate that Defendant intended to deprive the victim of his property permanently: Evidence was offered that the victim's wallet containing $200 had been taken from the residence and never returned.  As Defendant was not entitled to a specific jury instruction on theft, counsel was not deficient for failing to object to the lack of instruction.  Defendant has also failed to demonstrate he was prejudiced by the lack of instruction. . . .

(Ex. I, pp. 89-91) (emphasis in original) (footnotes omitted).  The state court record

confirms the foregoing facts.  (Ex. A, pp. 43-45 (verdict); Ex. A, pp. 50-57

(judgment); Ex. A, pp. 1-3 (charging documents); Ex. C, p. 318 (jury instruction on

burglary); Ex. B, pp. 100-03, 109-10, 146-47 (trial testimony)).  Petitioner's claim

based on the proposed objection, once again, is frivolous.  Counsel is not ineffective for failing to make a meritless objection.  *See Chandler, supra*; *Bolender, supra*.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Seven.

Ground Eight          "Petitioner Was Deprived of His Constitutional Right to Effective Assistance of Defense Counsel as Guaranteed by the Sixth and Fourteenth Amendments to the Constitution when Defense Counsel Failed to File a Timely Motion for New Trial on Count Two Alleged in the Information Based on the Verdict Being Against the Manifest Weight of the Evidence."  (Doc. 1, p. 16).

Again, petitioner's labeling of his claim does not reflect its substance.  In substance petitioner claims that counsel was ineffective for failing to object to the jury instruction for burglary.  Petitioner's proposed objection is that the instruction erroneously required the jury to decide whether the State proved beyond a reasonable doubt that he was armed (or armed himself within the structure) with a dangerous weapon in the course of committing the burglary.  (Doc. 1, pp. 16-17).  Petitioner states he exhausted this claim by presenting it to the state courts in his Rule 3.850 motion.  (Doc. 1, p. 17).  Respondent asserts the claim is procedurally defaulted because it was not presented to the state court and, even if exhausted, does not

warrant relief because the state court's rejection of the claim is consistent with *Strickland.* (Doc. 12, pp. 7-8, 32).

A.     Exhaustion and Procedural Default

Petitioner fairly presented the substance of this claim to the state courts as ground six of his amended Rule 3.850 motion. (*See* Ex. H, pp. 70-72). The state circuit court denied relief on the merits (Ex. I, pp. 91-92), and the First DCA summarily affirmed. (Ex. J). Petitioner satisfied the exhaustion requirement.

B.     Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

C.     Section 2254 Review of State Court's Decision

The First DCA reasonably could have concluded that petitioner failed to establish deficient performance and prejudice for the reasons stated in the state circuit court's order denying relief:

> Defendant also alleges that counsel was ineffective for failing to object to the Court's "erroneous expanding" of the crime charged by informing the jury to determine whether Defendant was armed or had armed himself in the structure during the course of the burglary. Defendant further contends "it is impossible to say" whether the alleged "erroneous expansion" provided an inference that Defendant was armed or armed himself when he committed the crime, therefore

defendant claims he cannot say beyond a reasonable doubt that he received a fair and impartial trial.

Defendant's claim is facially insufficient for failing to allege proper prejudice. As Defendant has already been given the opportunity to amend his motion and this claim remains facially insufficient, the court chooses to deny this claim with prejudice. See Nelson v. State, 977 So. 2d 710 (Fla. 1st DCA 2008); Oquendo v. State, 2 So. 3d 1001 (Fla. 4th DCA 2007); and Lawrence v. State, 987 So. 2d 157 (Fla. 2d DCA 2008). Even if Defendant's claim were not facially [in]sufficient, the claim would still be without merit. The jury did not make a specific finding that Defendant was armed or became armed within the victim's home. Clearly the jury's verdict finding Defendant guilty as charged of burglary of dwelling with assault or battery did not rest upon the instruction regarding whether Defendant was armed. Defendant is not entitled to relief as to this claim.

(Ex. I, pp. 91-92) (footnote omitted).

The record confirms petitioner's allegation that the jury was instructed that if they found petitioner guilty of burglary, they must also determine if the State proved beyond a reasonable doubt that petitioner, in the course of committing the burglary, was armed or armed himself in the structure with a dangerous weapon. (Ex. A, pp. 26-27 (written instructions); Ex. C, p. 320 (oral instructions)). The verdict form, however, made no mention of that additional finding (Ex. A, pp. 43-44), and did not require that finding. Nothing in the record suggests that the extraneous language in the instructions had any effect on the jury's verdict. Petitioner's showing of prejudice offers nothing but speculation and conclusions. Petitioner alleges that, "it

is impossible to say whether this erroneous expansion on defendant's burglary charge actually provided an inference of being armed in his battery charge as it was an element 'pertinent or material' to what the jury 'must' consider in (Ct. 2) in order to convict." (Doc. 1, p. 16). Petitioner also asserts that "it cannot be said to not have affected the verdict." (*Id*.). These allegations, however, do not demonstrate prejudice, i.e., a <u>reasonable</u> probability that had the extraneous language not been included in the instructions, petitioner would not have been found guilty of burglary of a dwelling with battery or assault, and aggravated battery on a person 65 years or older causing great bodily harm. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Eight.

| Ground Nine | "Counsel Failed to Object to the Court Having Contact with Bailiff and Jury During Deliberations without Knowledge and Participation of Counsel." (Doc. 1, p. 17). |
|---|---|

Petitioner claims counsel was ineffective for failing to object to the court granting the jury's request to open exhibit envelopes, without first consulting with counsel. (Doc. 1, pp. 17-18). Respondent asserts that petitioner is not entitled to

habeas relief, because the state court's rejection of this claim was consistent with clearly established federal law.  (Doc. 12, pp. 32-34).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state court in his amended Rule 3.850 motion.  The state circuit court denied relief (Ex. I, pp. 92-93), and the First DCA summarily affirmed.  (Ex. J).  The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance.

The record establishes that after jury deliberations began and the attorneys were dismissed from the courtroom, the trial judge called the attorneys and petitioner back to the courtroom.  The judge informed the parties:

> THE COURT:  All right.  We're back on the record.  State of Florida v. George Eddins case 12-752.  The defendant is present with counsel.  The assistant state attorney is present.  First of all, let me tell you something that happened before we got together.  Court Security Officer Dave Schmitto had called me and said the jury asked him if they could open the exhibit – the exhibits, and I said yes.
>
> MS. BRODERSEN [Prosecutor]:  You mean the biohazard stuff?

THE COURT:  Well, I think open the brown – the brown packaging.  I didn't hear anything about wanting to get into the biohazard, but just they had remained sealed.  So I said yes to that because they are introduced into evidence.  I didn't think we needed to reassemble for that.

Ms. Brodersen, any objection?

MS. BRODERSEN:  No, I mean, I guess my only concern was if they got into the – I mean, most all of that is biohazard, because it's all buccal swabs or swabs from the crime scene, but it was admitted into evidence so . . .

THE COURT:  Mr. Crawford, any objection?

MR. CRAWFORD:  No, Your Honor.

(Ex. C, pp. 342-43).  The court then discussed a separate jury question with counsel

– the jury question discussed in Ground Six above concerning the difference between

assault and battery.  Upon the jury being seated to hear the court's response to their

question concerning assault, the judge made these remarks to the jury:

THE COURT:  . . . The first thing that happened was that court security called me and asked me and said y'all wanted to open the exhibits, and I said that was okay.  I'm going to go ahead and tell you right now that there are some biohazard materials in there, and if y'all need gloves, we'll send gloves, but I think there's a general encouragement not to get into the biohazard, but certainly the envelopes were introduced in evidence.

Everything is in evidence and if you wanted to look inside and say, what does this look like, I gave him the okay and he said yes.  We

> didn't reassemble for all of that, because yes you can look at exhibits.
> So you heard it from me. . . .

(Ex. C, p. 345).

Petitioner asserts that the trial court engaged in "improper communication", which was "reversible error." (Doc. 1, p. 17). Petitioner alleges he was prejudiced by counsel's failure to object because the issue was not preserved for appellate review, the jury could have tampered with the evidence, and "[i]f not for counsel's error these proceedings would have been different." (*Id.*, p. 18).

The First DCA reasonably could have determined petitioner failed to establish prejudice under *Strickland*. Petitioner's bare, speculative allegations do not show actual prejudice. *See Richter*, 562 U.S. at 112; *Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1286 (11th Cir. 2013) ("Absent proof of actual prejudice 'it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.'" (*citing Strickland*, 466 U.S. at 687)).

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground Nine.

Ground Ten        <u>"Counsel Failed to Object to the State's Improper Bolstering of a Witnesses [sic] Testimony." (Doc. 1, p. 18).</u>

Petitioner's final claim is that counsel was ineffective for failing to object to the prosecutor's alleged improper bolstering of the victim's testimony. Specifically, petitioner references the prosecutor's closing argument where she argued that the victim's identification of petitioner was "100% convincing." (Doc. 1, pp. 18-19). Petitioner explains why he believes Mr. Lucas' identification was not convincing, and asserts that [t]he province of the jury was violated due to the states [sic] opinion that the victim's in-court identification was '100 percent convincing' . . . It cannot be said because of such an error to have occurred that it did not contribute to the verdict." (*Id.*, p. 19). Respondent asserts that petitioner is not entitled to habeas relief, because the state court's rejection of this claim was consistent with clearly established federal law. (Doc. 12, pp. 35-37).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard described above.

B.    Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state court in his amended Rule 3.850 motion. The state circuit court denied relief (Ex. I, pp. 93-94),

and the First DCA summarily affirmed.  (Ex. J).  The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's summary affirmance.

The court has reviewed all the evidence adduced at trial as well as the entirety of counsels' closing arguments.  The First DCA reasonably could have determined that the prosecutor's comment was proper (whether reviewed under Florida's standard or the federal standard) and, accordingly, defense counsel's failure to object was not ineffective.  When the prosecutor asked Mr. Lucas: "Now, do you see the person, who entered your residence that evening, and you saw in the spare bedroom that you saw[,] in the courtroom today, sir?"  (Ex. B, p. 112).  Mr. Lucas responded, "Yeah, yeah."  (*Id*.).  Lucas then pointed to petitioner and described his clothing.  (*Id*.).  Mr. Lucas' in-court identification was unequivocal.  Counsel was not ineffective for failing to make a meritless objection.  *See, e.g., Chandler*, 240 F.3d at 914 (concluding that the prosecutor properly commented on the evidence, that none of the prosecutor's comments rose to the level of fundamental error and, that defense counsel could not be deemed ineffective for failing to object).

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Ten.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, (2000) (emphasis added). The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. George Manuel Eddins, Jr.*, Escambia County Circuit Court Case No. 2012-CF-752, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 1st day of March, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.